IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Nathaniel Williams, #56082-019,        ) | |
| ) | Civil Action No. 6:06-1831-PMD-WMC |
| Petitioner,       ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs.                           ) | |
| ) | |
| Michael Pettiford, Warden;           ) | |
| Harley Lappin,                        ) | |
| ) | |
| Respondents.      ) | |
| ) | |

The petitioner, a federal prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**STATEMENT OF THE CASE**

The petitioner is currently incarcerated at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri, with a projected release date of August 28, 2009, via Good Conduct Time ("GCT") release. He was sentenced on December 16, 2004, to a 77-month term of incarceration in the United States District Court for the Northern District of Georgia, for Convicted Felon In Possession of a Firearm (18 U.S.C. § 922(g)).

At the time he filed this petition, the petitioner was incarcerated at the Federal Correctional Institution ("FCI") Bennettsville, South Carolina. He has named Michael Pettiford, Warden at FCI Bennettsville, and Harley Lappin, Director of the BOP, as the

respondents in his petition. In his petition, the petitioner attacks the validity of the BOP's regulations regarding whether the BOP has the sole authority to transfer him to a Community Confinement Center or home confinement at any time during his incarceration. On March 31, 2006, the BOP Executive Staff approved changing the name from Community Corrections Center ("CCC") to Residential Reentry Center. For purposes of this motion, the prior term will be used. The petitioner seeks an order directing the BOP to consider him for home confinement or CCC placement for greater than six months.

On September 5, 2006, the respondents filed a motion to dismiss or, in the alternative, for summary judgment. By order filed September 6, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. By order of this court filed September 25, 2006, the petitioner's motion for extension of time to respond was granted through October 31, 2006. On September 29, 2006, the petitioner filed his opposition to the motion to dismiss, along with a motion to amend the petition. By order filed October 27, 2006, the motion to amend was granted and the petitioner was given through November 17, 2006, to file his amended petition. He failed to do so.

## ANALYSIS

Pursuant to the statutory scheme set forth by Congress, the BOP takes custody of federal offenders who have been sentenced to serve a term of incarceration. For offenders sentenced to imprisonment, 18 U.S.C. § 3621(b) instructs the BOP to designate the place of imprisonment and lists factors for consideration in making placement and transfer determinations. The statute provides as follows:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health

and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence-

    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

    (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

18 U.S.C. § 3621(b).

    Title 18, United States Code, Section 3624(c) provides as follows:

Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

Previously, the BOP followed a practice of placing prisoners in pre-release CCCs for up to the last six months of their sentences, regardless of the length of their sentences. However, on December 13, 2002, this practice came to a halt when the BOP concluded that 18 U.S.C. § 3621(b) did not provide the BOP the authority to place prisoners in community pre-release confinement for any period exceeding that set forth in the statute. Based upon a long line of federal appellate cases, the BOP concluded that placement in community confinement does not constitute imprisonment and that placement by the BOP in such confinement "is clearly limited to a period not to exceed six months, of the last ten percentum of the term to be served."

On August 18, 2004, the BOP published a "proposed rule" document for notice and comment in the Federal Register. See 69 FR 51213. This document provided a 60-day period for the public to take notice of the proposed rule and submit comments to the BOP. On January 10, 2005, the BOP published a "final rule" document in the Federal Register. See 70 FR 1659. The "final rule" document provided responses to the comments submitted during the "proposed rule" stage, and finalized the federal regulations, as modified. The new regulations became effective February 14, 2005, and are codified at 28 C.F.R. §§ 570.20 and 570.21 ("the 2005 regulations"). The 2005 regulations provide:

> § 570.20  **What is the purpose of this subpart?**
> (a)     This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
> (b)     As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
>
> §570.21 **When will the Bureau designate inmates to community confinement?**
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and

> programming, during the last ten percent of the prison sentence being served, not to exceed six months.
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

Based upon the BOP's new regulation, the petitioner will be eligible for CCC placement on February 6, 2009. *See* def. m.s.j., ex. 1, Calculation of 6 Month/10% Date. The petitioner attacks the validity of the 2005 regulations and asks the court to order the BOP to consider him for placement in a CCC without regard to the 2005 regulations (pet. 1-2). Accordingly, the question before this court is whether the 2005 regulations, which categorically restrict placement of an inmate in a CCC to no more than 10% of his sentence, not to exceed six months, are invalid.

The Second, Third, Eighth, and Tenth Circuits are the only circuit courts to have considered the BOP regulations at issue, and each invalidated them. *See Wedelstedt v. Wiley*, 477 F.3d 1160, 1167-68 (10th Cir. 2007); *Levine v. Apker*, 455 F.3d 711, 87 (2nd Cir. 2006); *Fults v. Sanders*, 442 F.3d 1088, 1092 (8th Cir. 2006); *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 237 (3rd Cir. 2005). While these cases are not controlling, this court finds the reasoning of the Eighth Circuit Court of Appeals in *Fults* to be particularly persuasive:

> There is no question that § 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment. This case requires us to determine whether that discretion can be exercised on a categorical basis. The BOP argues that its exercise of discretion is consistent with the Supreme Court's opinion in *Lopez v. Davis*, 531 U.S. 230 (2001).
>
> In *Lopez*, the Supreme Court addressed the BOP's categorical exercise of discretion under 18 U.S.C. § 3621(e)(2)(b), which stated that an inmate convicted of a non-violent offense could have his or her period of incarceration reduced after

5

successfully completing a drug treatment program. The BOP had issued a regulation excluding inmates from early release under this provision if they were convicted of non-violent crimes involving firearms. 28 C.F.R. § 550.58(a)(1)(vi)(B). The Supreme Court upheld the regulation stating that nothing in the statute at issue prohibited "categorical exclusions." *Lopez*, 531 U.S. at 243,.

We believe that *Lopez* is distinguishable from this case. As the *Lopez* Court noted, "constraints ... requiring the BOP to make individualized determinations based only on postconviction conduct-are nowhere to be found in § 3621(e)(2)(b)." *Id.* at 241-42. In fact, the subsection at issue in *Lopez* offers no specific criteria to be considered-other than the overarching criterion that only nonviolent offenders are eligible for early release. Accordingly, the BOP can make categorical decisions within that class of offenders without violating that subsection.

Subsection 3621(b) is different from § 3621(e)(2)(b) in that the former lays out criteria that must be considered by the BOP in making placement determinations. Three of these factors-the nature and circumstances of the offense, the history and characteristics of the prisoner, and any statement by the court that imposed the sentence-cannot be fully considered without evaluating inmates on a case-by-case basis. Accordingly, *Lopez*, which dealt with a subsection void of any individual criteria, is not controlling.

The Third Circuit is the only Court of Appeals to have ruled on the validity of the BOP's February 2005 regulation. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235 (3d Cir.2005). In holding that the regulation was invalid, the *Woodall* court said:

> The regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

*Woodall*, 432 F.3d at 244.

The BOP offers a number of counter-arguments. First, it contends that § 3621(b) provides the BOP with the discretion to consider the enumerated factors, but not the duty to do so. Second, it claims that it did consider the enumerated factors in making the decision to categorically exclude from CCC placement those inmates not within the last ten percent of their sentences. Third, it asserts that it will consider the enumerated factors on an individualized basis when making placement decisions for inmates who are in the last ten percent of their sentences. These arguments were all also raised in the *Woodall* case, and we reject them for the same reasons discussed at length in that opinion. *Woodall*, 432 F.3d at 245-51. Those reasons are summarized below.

The BOP's first argument hinges on the use of the word "may," rather than "shall," at the beginning of § 3621(b). We agree with the *Woodall* Court that the term "may" describes the BOP's discretionary ability to place an inmate in any penal facility that meets the appropriate standards. The term does not modify the BOP's duty to consider the five enumerated factors when making placement decisions. The word immediately preceding the factors is "considering." This implies that the BOP must consider all of the factors that follow. This implication is bolstered by the statute's legislative history as discussed in *Woodall*. *Woodall*, 432 F.3d at 245-46. Nothing in § 3621(b) suggests that consideration of the factors is optional.

The BOP's contention that it considered all of the factors in making its categorical exercise of discretion is without merit. Three of the five factors relate to an inmate's individual circumstances. Accordingly, it would not have been possible for the BOP to consider all of the factors when it promulgated the regulations.

The BOP's most persuasive argument is that the § 3621(b) factors need not be considered until the BOP considers whether a specific individual should be transferred. This interpretation of the statute was the main focus of the dissent in *Woodall*. *Woodall*, 432 F.3d at 251-52 (Fuentes, J. dissenting) ("[T]he § 3621(b) factors need not be considered by the BOP until an inmate is actually considered for a transfer, and ... the BOP is not required to consider any inmate for transfer to a CCC until the lesser of six months or ten percent of an inmate's sentence remains."). The BOP asserts that there is no temporal requirement in § 3621(b) and that § 3624(c) requires the consideration of a transfer to a CCC only in the last ten percent of an inmate's sentence.

7

> We disagree with this interpretation. A BOP decision to not transfer an inmate - or, as in this case, a group of inmates - requires the same consideration of the § 3621(b) factors as does the decision to transfer an inmate to a CCC. It is impossible for the BOP to consider all five factors on a categorical basis. As such, the BOP's regulation necessarily conflicts with § 3621(b) by excluding an entire class of inmates - those not serving the final ten percent of their sentences - from the opportunity to be transferred to a CCC.
>
> The district court stated that while "the BOP labeled the [February 2005 regulation] a 'categorical exercise of discretion' it did not exercise its discretion at all." We agree that the BOP's regulation removed the opportunity for the BOP to exercise discretion for all inmates not serving the last ten percent of their sentences. Section 3621(b) requires that discretion be exercised on an individual basis. Thus, the BOP's regulation conflicts with § 3621(b) and is invalid.

*Fults*, 442 F.3d at 1090-92 (footnotes and parallel citations omitted).

Further, with regard to the respondents' argument (resp. m.s.j. 9-11) that the 2005 regulations are entitled to substantial deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the court in *Woodall* found as follows:

> Our review of an agency's interpretation of its governing statute is normally subject to *Chevron* deference. This standard of review requires a two-step inquiry:
>
>> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's

> > answer is based on a permissible construction of the statute.
>
> *Chevron*, 467 U.S. at 842-43.
>
> For the reasons stated above, it appears to us that the BOP's regulations do not meet the first prong of the *Chevron* test. This first prong of *Chevron* asks whether "the intent of Congress is clear" as to the question at issue. Here, considering the language of § 3621(b), and finding support in the statute's legislative history, we believe that it is. To be sure, the BOP has been granted broad discretion in placement matters. However, "[e]ven for an agency able to claim all the authority possible under *Chevron*, deference to its statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." *Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581, 600 (2004). Here, we are faced with a statute providing that the BOP must consider several factors in CCC placement, and a regulation providing that the agency may not consider those factors in full. The conflict between the regulations and the statute seems unavoidable.
>
> However, even assuming the statute is ambiguous, we do not find the regulations to be "based on a permissible construction of the statute." *See Chevron*, 467 U.S. at 843. Therefore, they cannot pass the second prong of *Chevron*. Under this second step, "we must determine whether the regulation[s] harmonize[ ] with the plain language of the statute, its origin, and purpose." *Zheng v. Gonzales*, 422 F.3d 98, 119 (3d Cir.2005) (citation and internal quotation marks omitted). For the reasons stated above, taking into consideration the language and purpose of the statute, as well as its legislative history, we find harmony lacking. We do not believe that the regulations are a permissible construction because they fail to take into account Congress's indications that certain individualized factors-including a sentencing court's recommendations-should be considered in the BOP's placement and transfer scheme. Therefore, the regulations are not "reasonable in light of the legislature's revealed design." *Id.* at 116 (quoting *NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)). We thus conclude that even if the BOP regulations pass the first prong of the *Chevron* analysis, they fail to meet the second.

*Woodall*, 432 F.3d at 248-49 (footnotes and parallel citations omitted).

9

In the only District of South Carolina case found by this court in which the validity of the 2005 regulations has been considered, the Honorable Patrick Michael Duffy, United States District Judge, adopted the report and recommendation of United States Magistrate Judge Joseph R. McCrorey. *Korda v. United States*, No. 3:06-0553-PMD, 2007 WL 712286 (S.C. March 6, 2007). Judge McCrorey found in his report that since the petitioner in that case had been released from federal custody, his petition was moot. However, in dicta, Judge McCrorey stated:

> As discussed in Respondents' memorandum, the district courts have differed in their analysis and viability of the February 2005 rule. Two circuit courts have found the rule invalid because the exercise of "categorical discretion" by the BOP limits the statutory directive to individually apply the factors set forth in 28 U.S.C. § 3621(b). *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3rd Cir.2005) and *Fults v. Sanders*, 442 F.3d 1088 (8th Cir.2006). The undersigned concludes the weight of authority holds the BOP 2005 regulation to be invalid.

*Id.* at *2.

While no controlling authority exists in the Fourth Circuit, this court finds that the 2005 regulations are invalid based upon the weight of the authority described above and the reasoning set forth in the above-cited cases. Accordingly, this court recommends that the respondents' motion for summary judgment be denied and the petitioner's habeas writ be granted.[1] Further, in determining whether the petitioner should be transferred to CCC, the BOP should be instructed to immediately consider the factors set forth in 18 U.S.C. § 3621(b) without regard to the 2005 regulations.

July 25, 2007　　　　　　　　　　　　　　　　s/William M. Catoe
Greenville, South Carolina　　　　　　　　　　United States Magistrate Judge

---

[1] The petitioner's motion to change venue will be held in abeyance pending the district court's action on this case. Should the district judge adopt this court's recommendation, this motion will be rendered moot.